**LIBERTAS TAX FUND I, LLC**      *      NO. 2021-CA-0550

**VERSUS**      *

**CANDACE TAYLOR**      *      COURT OF APPEAL

                              FOURTH CIRCUIT

      *      STATE OF LOUISIANA

* * * * * * *


APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2019-08747, DIVISION "J"
Honorable D. Nicole Sheppard,
* * * * * *
**Judge Roland L. Belsome**
* * * * * *
(Court composed of Judge Roland L. Belsome, Judge Rosemary Ledet, Judge
Sandra Cabrina Jenkins)


Wesley M. Plaisance
BREAZEALE, SACHSE & WILSON, L.L.P.
909 Poydras Street, Suite 1500
New Orleans, LA 70112

Laura S. Achord
BREAZEALE, SACHSE & WILSON, L.L.P.
300 Washington Street, Suite 307
Monroe, LA 71201


      COUNSEL FOR PLAINTIFF/APPELLEE


Rudy Willie Gorrell, Jr.
ATTORNEY AT LAW
1215 Prytania Street
Suite 223
New Orleans, LA 70130


      COUNSEL FOR DEFENDANT/APPELLANT


                              **AFFIRMED**
                              **June 16, 2022**

RLB

RML

SCJ

In this lawsuit to quiet title, Plaintiff, Libertas Tax Fund I, LLC ("Libertas"), sought to confirm its tax sale title and ownership. Defendant, Ms. Candace Taylor, failed to answer the petition and a default judgment was entered against her. She later filed a petition to annul the default judgment, which was denied. Ms. Taylor seeks review of the denial of her petition to annul. For the following reasons, we affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case stems from the trial court's confirmation of a default judgment. On August 20, 2019, Libertas filed a petition to quiet title and to confirm a tax sale of property located at 13640 North Cavelier Drive, in New Orleans ("Property"). The petition named Ms. Taylor as the defendant, owner of the Property. In response to her *pro se* motion for an extension, the trial court granted Ms. Taylor a thirty-day extension to file responsive pleadings. The trial court's order stated that responsive pleadings were due by October 13, 2019.

Despite the extension, Ms. Taylor failed to timely file responsive pleadings. Approximately five months after the expiration of the extended deadline, Libertas filed a motion for entry of a preliminary default judgment on March 10, 2020. The

1

next day, the trial court entered a preliminary default judgment. On March 11, 2020, Libertas sent notice of the preliminary default by certified mail to Ms. Taylor at two separate addresses: the Property and her former address in Westwego, Louisiana. Over four months later, on July 20, 2020, the trial court entered a default judgment in favor of Libertas, confirming its tax sale title and declaring its sole ownership of the Property.

Subsequently, on August 12, 2020, Ms. Taylor filed a petition to annul the judgment,[1] along with a third party demand against Cook Title & Closing Services, LLC.[2] The claims in the petition to annul were premised on the lack of proper notice and ill practices. After a hearing and the submission of post-hearing briefs, the trial court denied Ms. Taylor's petition to annul on February 8, 2021. Later, on June 3, 2021, the trial court denied Ms. Taylor's motion for new trial. In this devolutive appeal, Ms. Taylor seeks review of the trial court's February 8, 2021,

---

[1] The petition to annul was filed in the same proceedings as the default judgment on the petition to quiet title. Notably, the jurisprudence suggests a conflict in this circuit, and amongst the circuits, as to whether a petition to annul based on fraud or ill practices may be brought in the same proceeding as the offending judgment. *See Succession of Schulz*, 622 So.2d 693, 695 (La. App. 4 Cir. 1993), *writ denied*, 631 So.2d 1161 (La. 1994)(to annul a judgment obtained by fraud or ill practices a direct action, *i.e.*, a new and separate proceeding, must be brought for that purpose in the court which rendered the judgment not in the existing proceedings from the judgment complained of)(citing *LeGlue Buick, Inc. v. Smith*, 390 So.2d 262, 264 (La. App. 3 Cir. 1980), *but see* n. 3; *Roebuck v. Roebuck*, 2016-0221 (La. App. 4 Cir. 8/17/16), 198 So.3d 1210, 1213, *writ not considered*, 2016-1884 (La. 12/5/16), 210 So.3d 809 "'an action to annul a judgment based on alleged fraud or ill practices cannot be collaterally attacked in the existing proceedings, but must be brought by a direct or new and separate proceeding in the court that rendered the judgment sought to be annulled.'" (quoting *Bracken v. Payne & Keller Co.,* 2014-0637, p. 7 (La. App. 1 Cir. 8/10/15), 181 So.3d 53, 58). *Compare*: *Mooring Fin. Corp. 401(K) Profit Sharing Plan v. Mitchell*, 2008-1250, p. 9 (La. App. 4 Cir. 6/10/09), 15 So.3d 311, 318 (a direct action praying for the nullity of a relatively null judgment can be brought by filing a separate proceeding or by the filing a pleading petition in the same proceeding as that in which the offending judgment was rendered) (citing *Smith v. LeBlanc*, 2006-0041, pp. 6-7 (La. App. 1 Cir. 8/15/07), 966 So.2d 66, 71-72); *Hyde v. Cash Control Sys., L.L.C.*, 2014-0258, p. 6 (La. App. 4 Cir. 9/3/14), 150 So.3d 7, 12 n.8 (the law requires that an action for nullity pursuant to La. C.C.P. art. 2004 must be brought in a direct action, by way of a petition, which may be filed either in a new proceeding or in the existing proceeding that produced the offending judgment).

[2] In her third party demand, Ms. Taylor alleged that Cook Title received the money to pay the 2016 property taxes and refused to pay them.

2

judgment denying her petition to annul the default judgment, and the June 3, 2021, judgment denying her motion for new trial.[3]

**STANDARD OF REVIEW**

The trial court's factual findings are reviewed under the manifest error standard. *Richard v. Richard*, 2014-1365, p. 4 (La. App. 4 Cir. 6/03/15), 171 So.3d 1097, 1100 (citation omitted). Applying the manifest error standard of review, in order to reverse a trial court's determinations of fact, the appellate court must review the entire record and conclude that (1) a reasonable factual basis does not exist for the trial court's finding, and (2) the record establishes that the finding is clearly wrong or manifestly erroneous. *Lomont v. Bennett*, 2014-2483, p. 16 (La. 6/30/15), 172 So.3d 620, 632-33.

While the trial court's factual findings are subject to manifest error review, appellate review of questions of law is simply a determination of whether the trial court was legally correct or incorrect in its application of the law. *Richard*, 2014-1365, p. 3, 171 So.3d at 1100 (citation omitted). The appellate court gives no special weight to the trial court's findings on questions of law, but exercises its constitutional duty to review questions of law *de novo* and render judgment on the record. *Winston v. Millaud*, 2005-0338, p. 5 (La. App. 4 Cir. 4/12/06), 930 So.2d 144, 150 (citations omitted).

---

[3] Ms. Taylor's brief concerning the motion for new trial does not raise any issue outside of those pertaining to the underlying judgment. Given her failure to brief the issue of the denial of the motion for new trial, that issue is waived on appeal. Thus, it is not before the Court. *See Alexander v. Centanni*, 2020-0321, ---So.3d---, 2021 WL 343404, at *7 n. 22 (La. App. 4 Cir. 1/27/21), *writ denied*, 2021-00452 (La. 5/25/21), 316 So.3d 444 (citing *McMaster v. Progressive Sec. Ins. Co.*, 2014-0155, pp. 6-7 (La. App. 4 Cir. 10/29/14), 152 So.3d 979, 983 ('[i]t is well settled that if an appellant identifies an error or an issue presented for review, but fails to brief that point with citations to the record and support in the law, that issue is deemed waived. *See* Uniform Rules Courts of Appeal, Rule 2-12.4(B)(4).')).

## DISCUSSION

On appeal, Ms. Taylor asserts that the trial court erred in denying her petition to annul the default judgment due to counsel's failure to provide proper notice pursuant to La. C.C.P. art. 1702.[4] Though intermingled, Ms. Taylor raises two distinct issues concerning: 1) lack of sufficient notice, and 2) ill practices. A party can annul a final judgment for vices of either form or substance. La. C.C.P. art. 2001.[5] Either vice may render a final judgment null.

## VICE OF FORM - NOTICE

First, Ms. Taylor challenges the form of the judgment. She argues that the notice of intent to seek default judgment was improper under Art. 1702, because there is no evidence that the notice was properly mailed to[6] or received by Ms. Taylor.

A final judgment **shall** be annulled for a vice of form if it is rendered against a defendant against whom a valid judgment of default has not been taken. La.

---

[4] La. C.C.P. art. 1702 states, in relevant part:

> A. (1) If a defendant in the principal or incidental demand fails to answer or file other pleadings within the time prescribed by law or by the court, and the plaintiff establishes a prima facie case by competent and admissible evidence that is admitted on the record, a default judgment in favor of the plaintiff may be rendered, provided that notice that the plaintiff intends to obtain a default judgment is sent if required by this Paragraph, unless such notice is waived. The court may permit documentary evidence to be filed in the record in any electronically stored format authorized by the local rules of the district court or approved by the clerk of the district court for receipt of evidence.

> (2) If a party who fails to answer has made an appearance of record in the case, **notice that the plaintiff intends to obtain a default judgment shall be sent by certified mail to counsel of record for the party**, or if there is no counsel of record, to the party, at least seven days before a default judgment may be rendered [emphasis supplied].

[5] La. C.C. art. 2001 states: "[t]he nullity of a final judgment may be demanded for vices of either form or substance, as provided in Articles 2002 through 2006."

[6] Notably, Ms. Taylor conceded that Libertas placed the certified letter in the mail at the hearing in the trial court. Nevertheless, the evidence, discussed *infra*, supports the trial court's conclusion that the certified letters were actually mailed by Libertas.

C.C.P. art. 2002(A)(1)-(2) (emphasis supplied).[7] Art. 1702(A) sets forth two procedures for the valid confirmation of a default judgment. *Power Mktg. Direct, Inc. v. Foster*, 2005-2023, p. 10 (La. 9/6/06), 938 So.2d 662, 669. The required procedure hinges upon whether, or not, an appearance of record has been made. When a judgment of default has been entered against a party that is in default after having made an appearance of record, as in this case,[8] notice of the date of the entry of the judgment of default must be sent by certified mail by the party obtaining the judgment of default to the party in default, at least seven days, exclusive of holidays, before confirmation of the judgment of default. Art. 1702(A)(1)-(2).[9] "If a judgment of default is confirmed before the expiration of the delay prescribed by statute, i.e., seven legal days after notice is sent if the defaulting party has made an appearance of record, the confirmation of the judgment of default is premature, and the judgment is null and invalid." *Id.*, 2005-2023, p. 11, 938 So.2d at 670 (citation omitted).

In this case, the record reveals that Libertas mailed the notice of default by certified mail in accordance with the law. In particular, a copy of the certified letter, with postage attached, as well as the United States Post Office

---

[7] La. C.C.P. art. 2002 states, in pertinent part:

> A. A final judgment shall be annulled if it is rendered:
>
> ***
>
> > (2) Against a defendant who has not been served with process as required by law and who has not waived objection to jurisdiction, or against whom a valid default judgment has not been taken.

[8] Ms. Taylor filed a motion for an extension of time to file responsive pleadings, which constitutes an appearance of record. *See, Bethley v. Nat'l Auto Ins. Co.*, 2002-1572, p. 3 (La. App. 4 Cir. 2/12/03), 840 So.2d 608, 610.

[9] Specifically, Art. 1702(A)(2) states: "…notice that the plaintiff intends to obtain a default judgment shall be sent by certified mail … to the party, at least seven days before a default judgment may be rendered."

correspondence communicating that the letter was processed, reflect that notice of the preliminary default was sent by certified mail to Ms. Taylor at the Property.[10]

After a hearing, the trial court denied the petition to annul the default judgment. It concluded that actual receipt of the notice sent by certified mail was not required under Art. 1702. We agree.

Ms. Taylor argues that the legislature, by providing for a certified letter, intended to require receipt of the letter by a defendant. However, statutory interpretation necessarily begins with the plain language of the statute itself. *In re Succession of Faget,* 2010-0188, p. 8 (La. 11/30/10), 53 So.3d 414, 420. When the provision is clear and unambiguous and its application does not lead to absurd consequences, its language must be given effect, and its provisions must be construed to give effect to the purpose indicated by a fair interpretation of the language used. La. C.C. art. 9;[11] La. R.S. 1:4;[12] *In re Clegg,* 2010-0323, p. 20 (La. 7/6/10), 41 So.3d 1141, 1154. Unequivocal provisions are not subject to judicial construction and should be applied by giving words their generally understood meaning. La. C.C. art. 11;[13] La. R.S. 1:3.[14]

The specific provision at issue here requires a plaintiff to send notice by certified mail seven days prior to obtaining a default judgment. The Supreme Court has found that the term "send" (like the term "forward") does not include the concept of "delivery" or "receipt." *Hunter v. Morton's Seafood Rest. & Catering,*

---

[10] A second certified letter was sent to her former residence.

[11] La. C.C. art. 9 states: "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature."

[12] La. R.S. 1:4 states: "[w]hen the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit."

[13] La. C.C. art. 11 states, in relevant part: "[t]he words of a law must be given their generally prevailing meaning."

[14] La. R.S. 1:3 states, in relevant part: "[w]ords and phrases shall be read with their context and shall be construed according to the common and approved usage of the language."

6

2008-1667, pp. 5, 8 (La. 3/17/09), 6 So.3d 152, 155, 157 (citation omitted); *see also Williams v. Williams*, 2017-0607, p. 5 (La. App. 4 Cir. 11/29/17), 316 So.3d 970, 974, *writ denied*, 2018-0122 (La. 3/9/18), 238 So.3d 452.

In light of the plain language of the article and the jurisprudence, we do not find that Art. 1702(A)(2) requires actual receipt of the letter. As such, the trial court's finding that notice was sent in accordance with Art. 1702 was not manifestly or legally erroneous. Accordingly, Ms. Taylor failed to prove a vice of form.

## VICE OF SUBSTANCE - ILL PRACTICES

Next, Ms. Taylor challenges the substance of the judgment. She contends that the judgment is null because the lack of proper notice under Art. 1702 constituted ill practices.[15]

A final judgment obtained by fraud or ill practices **may** be annulled for a vice of substance in accordance with La. C.C.P. art. 2004(A) (emphasis supplied).[16] A trial court has discretion in deciding whether a judgment should be annulled due to fraud or ill practices, to which discretion a reviewing court will defer. *Foster*, 2005-2023, p. 10, 938 So.2d at 669. As the party seeking the annulment of a judgment based upon Art. 2004, Ms. Taylor bears the burden of demonstrating how she was excused or prevented from asserting her claims or defenses. *CA One/Pampy's v. Brown, et al*, 2007-1377, p. 6 (La. App. 4 Cir. 4/2/08), 982 So.2d 909, 913 (citation omitted).

---

[15] As discussed, there is conflicting jurisprudence as to whether the petition to annul for ill practices was properly filed in the existing proceedings on the default judgment, rather than in a separate proceeding. Notably, the parties do not raise this procedural issue. In light of the jurisprudence in support of filing a petition for nullity in the existing proceedings, we will consider this assignment of error.

[16] La. C.C.P. art. 2004(A) states: "[a] final judgment obtained by fraud or ill practices may be annulled."

The criteria for determining whether a judgment has been obtained by ill practices are: 1) whether the circumstances under which the judgment was rendered evidenced the deprivation of legal rights of the litigant seeking relief; and 2) whether the enforcement of the judgment would be inequitable and unconscionable. *Brown*, 2007-1377, p. 6-7, 982 So.2d at 914 (citing *Foster*, 05-2023, p.12, 938 So.2d at 670). Art. 2004 is not limited to cases of actual fraud or intentional wrongdoing, but is sufficiently broad to encompass all situations wherein a judgment is rendered through some improper practice or procedure that operates, even innocently, to deprive the party cast in judgment of some legal right, and where the enforcement of the judgment would be unconscionable and inequitable. *Kem Search, Inc. v. Sheffield*, 434 So.2d 1067, 1070 (La. 1983).

A nullity action is not a substitute for a motion for new trial or an appeal from a default judgment. *West v. Melancon*, 2005-1183, p. 3 (La. App. 4 Cir. 4/26/06), 929 So.2d 809, 811; *Payne v. Glass*, 41,232, (La. App. 2 Cir. 8/23/06), 939 So.2d 526. Additionally, a nullity action is not the solution to legal rights lost through a litigant's neglect or a failure to act. *Payne*, 41, 232, p. 6, 939 So.2d at 530 (citation omitted). In the absence of a valid reason for a defendant's failure to defend the original suit in which a default judgment has been taken, a defendant cannot maintain an action for nullity of the judgment based on fraud or ill practices that could have been pleaded in the original suit. *Midland Funding LLC v. Kelly*, 2011-0659, p. 4 (La. App. 4 Cir. 12/7/11), 81 So.3d 84, 87.

Notably, the record in this case does not evidence that Ms. Taylor asserted good cause for her failure to file responsive pleadings after being served with the petition, appearing, and obtaining a thirty-day extension to do so. Additionally, after being served with the notice of the default judgment, Ms. Taylor filed a

petition to annul rather than filing a timely motion for new trial and/or an appeal to the default judgment.

Further, as discussed, Libertas properly sent a notice in accordance with Art. 1702 to the Property. The evidence is inconclusive as to whether this letter was received. However, Libertas also sent a second notice. The second notice was also sent by certified mail to Ms. Taylor's last place of domicile.[17] Libertas received a return receipt from the second letter, signed by Ms. Taylor's stepfather.

Given Ms. Taylor's failure to defend the original suit and Libertas' attempts to give her actual notice, we cannot say there was a deprivation of legal rights, which rendered the enforcement of the judgment inequitable or unconscionable. Accordingly, the trial court's judgment denying the petition for nullity for ill practices was reasonable. Thus, Ms. Taylor failed to establish a vice of substance.

**CONCLUSION**

Absent proof of a vice of form or substance, there is no basis to nullify the default judgment. For these reasons, the trial court's judgment denying the petition to annul the default judgment is affirmed.

**AFFIRMED**

---

[17] Ms. Taylor was also served with the original petition at both locations.